IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                       CRIMINAL ACTION NO. 2:12cr162

MICHAEL D. SHANKLIN, JR.,

    Defendant.

## *MEMORANDUM OPINION & ORDER*

Before the Court is Defendant Michael D. Shanklin, Jr.'s Motion to Suppress all evidence obtained from Defendant's interrogation statements, bedroom, computers and cell phone in violation of the Fourth and Fifth Amendments to the Constitution of the United States of America. Specifically, Defendant contends that the police lacked consent to search his cell phone and lacked probable cause for warrants to search his bedroom and computers. Defendant also insists that incriminating statements were elicited from him after he invoked his right to speak to an attorney. Having reviewed the pleadings and held a hearing on the Motion to Suppress, this matter is now ripe for judicial determination. Defendant's Motion to Suppress evidence from the illegal cell phone search and insufficient warrant affidavits is **GRANTED**. Suppression of Defendant's statements taken after *Miranda* warnings were given is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On January 18, 2012, Defendant was arrested for sexual battery and abduction of a minor student at the high school where he worked as a math teacher. At the outset of his video recorded post-arrest interview, Detective Brian Slomeana of the Virginia Beach Police Department advised Defendant of his *Miranda* rights against self-incrimination. Twice during

1

the interview, Defendant expressed his intent to request an attorney pursuant to those rights. Nevertheless, Defendant signed a *Miranda* waiver form administered by Detective Andy McNeal. Defendant eventually told detectives that he spanked the student in his classroom. At a point during the interrogation, Defendant gave Detective McNeal his cell phone pass code to access his text messages in order to prove the victim's alleged accusation that he text messaged her untrue. Detective McNeal searched the cell phone for the text messages while in the interrogation room with Defendant. Detective Slomeana performed a subsequent search of the cell phone after the interview, uncovering non-inculpatory photographs of clothed minor females in various settings.

On January 19, 2012, Detective Slomeana submitted an affidavit for a warrant to search Defendant's bedroom for multimedia equipment. To establish probable cause, Detective Slomeana cited Defendant's cell phone images of minor females along with statements made by the victim that Defendant may have assaulted other students and the detective's own knowledge that offenders use social media to contact potential victims. When the warrant was executed, Defendant's computer and laptop were seized.

On July 12, 2012, Detective Slomeana submitted an affidavit for a warrant to search the contents of Defendant's computers, citing as probable cause additional statements from the victim about her interactions with the Defendant, confessionary statements from the Defendant on the day of his arrest, and the detective's knowledge that evidence of exploitation of children may be present on computers possessed by child abusers. Upon execution of the warrant, law enforcement discovered child pornographic images on Defendant's computers. On November 7, 2012, an Eastern District of Virginia Grand Jury issued a Criminal Indictment charging

Defendant with Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(1), (2) and (8)(A).

At the suppression hearing on September 17, 2013, the Government called arresting Officer Lachlan Crawford and Detective Slomeana as witnesses. Officer Crawford stated that after suggesting that arrestees typically bring their cell phone, wallet and keys with them upon arrest, Defendant asked for his cell phone to be brought with him to the detective bureau in an evidence bag. Detective Slomeana stated that Defendant voluntarily chose to waive his *Miranda* rights to speak with an attorney and to remain silent. He also testified to Defendant's willingness to share his cell phone pass code.

## II. LEGAL STANDARDS

In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) (citations omitted). "At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452-53 (10th Cir. 1993). *See also Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995) ("In the usual case, the fact finder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example."). As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove by a preponderance of the evidence that the

challenged evidence is admissible. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Matlock*, 415 U.S. 164, 178 (1974).

### A. *Miranda* Rights and Waiver

When law enforcement interrogates a suspect while in custody, *Miranda* warnings are required. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Id.* If law enforcement does not administer *Miranda* warnings before they question a person in custody, evidence resulting from the questioning must be suppressed. However, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.*

To determine whether a suspect has made a voluntary, knowing, and intelligent waiver, courts must engage in two inquiries. First, a court must find that "the relinquishment of the right 'must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir. 2002) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, a court must find that the "'the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* at 140. If a court finds that the under the totality of the circumstances there was "both an uncoerced choice and the requisite level of comprehension," a defendant's waiver of *Miranda* rights will be considered voluntary, knowing and intelligent. *Id.* When analyzing the totality of the circumstances, courts have

4

considered such factors as the suspect's "intelligence and education," his "age and familiarity with the criminal justice system," and "the proximity of the waiver to the giving of the *Miranda* warnings." *Poyner v. Murray*, 964 F.2d 1404, 1413 (4th Cir. 1992); *see, e.g., United States v. Robinson*, 404 F.3d 850, 860-61 (4th Cir. 2005) (upholding waiver of rights by sixteen year old defendant with I.Q. of 70 where defendant was street wise, expressed no inability to understand rights as they were read, and waived them when questioned for a third time after being conversant with rights based on two prior readings). A waiver is involuntary "when induced by such duress or coercion, express or implied, that the accused's 'will has been overborne and his capacity for self-determination critically impaired.'" *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)).

A defendant's Fifth Amendment right to an attorney, which he or she must be advised of before custodial interrogation pursuant to *Miranda*, is neither offense specific nor triggered solely with respect to charged conduct. *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991). To invoke a right to speak to an attorney, a defendant must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "If an accused makes a statement concerning the right to counsel that is 'ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins*, 560 U.S. 370, 130 S. Ct. 2250, 2259-60 (2010) (internal citations omitted). *See also Davis*, 512 U.S. at 459 (noting that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not

5

require the cessation of questioning."). *But see McNeil,* 501 U.S. at 177 (holding that if a defendant clearly and unequivocally invokes this right, "he may not be reapproached regarding any offense unless counsel is present."). However, if a suspect continues to be interrogated after an unequivocal request to speak with an attorney, his statements are presumed involuntary and are therefore inadmissible at trial, even where the suspect executes a waiver that would render his statements voluntary under traditional standards. *Michigan v. Harvey,* 494 U.S. 344, 350 (1990); *see also Maryland v. Shatzer,* 559 U.S. 98, 104 (2010) ("[I]f the suspect states that he wants an attorney, the interrogation must cease until an attorney is present.").

### B. Unlawful Search and Seizure

Generally, the Fourth Amendment requires that an arrest or search be based upon probable cause and executed pursuant to a valid warrant. *Katz v. United States,* 389 U.S. 347 (1967). A search warrant is valid if, "given all the circumstances set forth in the affidavit before him," the magistrate properly finds that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). An affidavit is properly based on probable cause when "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). Review of the probable cause determination by the magistrate must be shown "'great deference,' and [courts should] not invalidate a warrant 'by interpreting [an] affidavit[t] in a hypertechnical, rather than a commonsense, manner.'" *United States v. Lalor,* 996 F.2d 1578, 1581 (4th Cir. 1993) (quoting *Gates,* 462 U.S. at 236). Accordingly, a review of the probable cause determination should only consider "whether there is substantial evidence in the record supporting the magistrate's decision

to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

A warrantless search does not violate the Fourth Amendment if the Government can prove that it falls under an established exception to the warrant requirement. One of the specifically established exceptions is a search conducted pursuant to voluntary consent. *See Schneckloth*, 412 U.S. at 218 (holding that a suspect's voluntary consent may justify a warrantless search with voluntariness determined by the totality of the circumstances). As long as officers do not engage in any type of hostile, coercive or intimidating behavior and the suspect possesses the mental capacity to understand the nature and consequences of giving consent, a suspect's acquiescence to a request to search property he owns or controls may be deemed voluntary consent. *Id.* at 233. Another specifically established exception to the warrant requirement is a search incident to a lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."). Pursuant to this exception, law enforcement officers may search "the arrestee's person and the area 'within his immediate control'" following a lawful arrest. *United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

Unless an exception to the warrant and probable cause requirements applies, "[e]vidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule . . . the overarching purpose of which is 'to deter future unlawful police conduct.'" *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009) (quoting *United States v. Calandra*, 414 U.S. 338, 347-48 (1974) (other citation omitted); *see also United States v. Thompkins*, 408 F. App'x 719, 721 (4th Cir. 2011) (holding that generally, evidence obtained after an illegal arrest or seizure must be suppressed as fruit of the illegal detention)). However, the fruits of a search

executed under a warrant approved by a detached and neutral magistrate, even if not supported by probable cause, will not be suppressed if the officers acted in good faith with reasonable reliance upon the warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). The good faith exception to the exclusionary rule dictates:

> [T]he deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence obtained by an officer acting with objective good faith within the scope of a search warrant issued by a magistrate. Hence, under *Leon*'s good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was "objectively reasonable."

*United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 922) (internal citations omitted). However, the Supreme Court has also identified four situations in which the good faith exception does not apply:

> (1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) if the issuing magistrate wholly abandoned his judicial role in the manner ...(3) if the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) if under the circumstances of the case the warrant is so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid.

*United States v. DeQuasie*, 373 F.3d 509, 519-520 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 923 (internal citations, quotation marks, punctuation omitted)). Indicia of probable cause exists if there are sufficient signs of probable cause in the affidavit to support the warrant. *See, e.g., United States v. Williams*, 548 F.3d 311 (4th Cir. 2008) (holding that where defendant faced a drug conspiracy prosecution, there was indicia of probable cause in the affidavit in the form of defendant's past involvement in drug trafficking activities and special agent knowledge of drug dealers' tendency to store narcotics and firearms in their homes). Indicia of probable cause does not exist in a "bare bones" affidavit containing "only suspicions, beliefs, or conclusions, without

8

providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Laughton*, 409 F.3d 744, 748-49 (6th Cir. 2005) (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)); *see also United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) (refusing to apply the good faith exception due to the "'bare bones' nature of the affidavit" and concluding that "the state magistrate could not have acted as other than a 'rubber stamp' in approving such an affidavit.").

### III. DISCUSSION

This Court will consider several questions. Initially, the Court will determine if the Defendant invoked or waived his right to counsel prior to making inculpatory statements while in police custody. Then, the Court will consider whether the search of Defendant's cell phone was consensual, whether the search warrants for Defendant's computers were supported by probable cause, and whether law enforcement officers acted with objective good faith within the scope of a search warrant issued by a magistrate.

#### A. Suppression of Statements under *Miranda*

To prevent suppression of statements Defendant made after he was mirandized, the Government must establish by a preponderance of the evidence that the statements were not a product of a violation of Defendant's right against self-incrimination. The parties dispute whether Defendant invoked his right to counsel. Defendant claims that once he stated "I'm going to have to ask for a lawyer" toward the beginning of his interview before using the restroom, detectives should have ceased all conversation with him and provided legal representation. *See Edwards v. Arizona*, 451 U.S. 477, 485 (1981) ("[I]t is inconsistent with *Miranda* and its progeny for authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel."). However, the Government insists that Detective

Slomeana terminated discussion of the case at that point but Defendant voluntarily reinitiated conversation about the circumstances surrounding his arrest. The Government argues that Defendant's statement, "I'm going to have to ask for a lawyer," as well as Defendant's later statement to Detective Slomeana, "I will talk to you for a couple minutes but if this is going in the wrong direction I'm going to have to ask for a lawyer," were not unequivocal invocations of Defendant's right to counsel.

Having viewed the recording of the interview, the Court finds both of Defendant's statements about counsel ambiguous. Defendant's declarations are analogous to other cases where the Fourth Circuit has held suspects' equivocal requests for an attorney were not invocations of a right to counsel under the Fifth Amendment. *See, e.g., Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir. 2000) ("I think I need a lawyer"); *Mueller v. Angelone*, 181 F.3d 557, 573-74 (4th Cir. 1999) ("Do you think I need an attorney here?"). *See also Davis*, 512 U.S. at 462 ("Maybe I should talk to a lawyer"); *United States v. Zamora*, 222 F.3d 756, 765-66 (10th Cir. 2000) ("I might want to talk to an attorney"); *United States v. Posada-Rios*, 158 F.3d 832, 867 (5th Cir. 1998) (I "might want to get a lawyer then, huh?"); *Diaz v. Senkowski*, 76 F.3d 61, 63-65 (2d Cir. 1996) ("I think I want a lawyer"). Defendant did not make an unequivocal request that was "clear enough to alert a reasonable police officer that he was requesting an attorney." *Burket*, 208 F.3d at 198. Also, after each mention of an attorney, Defendant reinitiated discussion of the case. Given the precedent in the Fourth Circuit and other circuits, Defendant made "reference[s] to an attorney that [were] ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Davis*, 512 U.S. at 459. His declarations were not constitutionally protected invocations.

The parties also dispute whether Defendant's waiver of his *Miranda* rights was voluntary, knowing and intelligent. Defendant insists that the waiver occurred after detectives continued their interrogation notwithstanding his request for an attorney. Defendant also asserts that his *Miranda* waiver was coerced because detectives told him that the charges could not be further discussed until they clarified his intent to request an attorney. The Government claims that Defendant acknowledged that he understood the waiver verbally and by signing the waiver form, and was not forced to discuss the case with the detectives.

Upon analyzing the totality of circumstances at the time *Miranda* rights were waived, the Court concludes that Defendant's waiver was voluntary, knowing, and intelligent. Defendant is thirty-nine years old, served in the military and currently works as a teacher. *Miranda* warnings were explained to Defendant twice during his interrogation. Defendant asked clarification questions before signing the waiver form. Defendant was notified of the charges against him and was told where the incident leading to the arrest occurred before the waiver form was presented. *Compare United States v. Bullock*, 877 F. Supp. 270, 276 (1995) (holding that waiver of *Miranda* was not knowing and intelligent when defendant had not been told why he was placed under arrest or that drugs were found in his vehicle and defendant refused to sign a waiver form). Given the totality of the circumstances under which the *Miranda* warnings were waived as well as objective indications of Defendant's ability to understand his rights and his waiver, the Court finds that Defendant made a waiver with the "awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Cristobal*, 293 F.3d at 140 (4th Cir. 2002) (quoting *Moran*, 475 U.S. at 421).

As a result, the Court will not suppress statements Defendant made after he equivocally mentioned that he may request an attorney. The Government has demonstrated by a

11

preponderance of the evidence that Defendant did not invoke his right to counsel and waived this right voluntarily, knowingly and intelligently.

### B. Probable Cause and Good Faith Execution of Search Warrants

To prevent suppression of the evidence seized as a result of the searches at issue, the Government must demonstrate by a preponderance of the evidence that the search of the cell phone was consensual and the search of the bedroom and computers are supported by probable cause, or, in the absence of probable cause, a warrant law enforcement officers executed in good faith.

Defendant argues that the unincriminating images of minor females were discovered through an unconstitutional search of his cell phone because he did not give the arresting officer permission to bring his cell phone to the detective bureau. Defendant also asserts that he did not consent to a search of his entire cell phone. The Government insists the search of the cell phone is constitutional. Defendant asked to bring his cell phone with him upon arrest and voluntarily gave the pass code to Detective McNeal for his own benefit; thus the Government argues that the search incident to a lawful arrest and consent exceptions to the warrant requirement apply.

The Court finds the warrantless search of the cell phone unconstitutional. The search incident to a lawful arrest exception to the warrant requirement does not apply because the cell phone was not on Defendant's person or in an area controlled by Defendant at the time of his arrest; therefore, no interest in preservation of evidence was at stake. The consent exception to the warrant requirement applies, but Defendant's consent did not permit investigation of the entire contents of the cell phone outside of Defendant's presence. The parties agree that Defendant gave his pass code to Detective McNeal to investigate text messages. The scope of Defendant's consent was limited to a search for text messages to the complainant student. *See*

*Florida v. Jimeno*, 500 U.S. 248 (1991) (holding that a defendant may delimit the scope of a search to which he consents); *United States v. Arellano*, 410 F. App'x. 603 (4th Cir. 2011) (holding that even though a suspect consented to a search of his person leading to the discovery of a cell phone, an officer's subsequent turning on and using the suspect's cell phone to acquire additional evidence was unconstitutional and exceeded the scope of the suspect's consent). Defendant never explicitly or implicitly consented to a post-interrogation search of the photographs on his cell phone. It was not objectively reasonable for law enforcement to conclude that Defendant's consent extended to a search of photographs stored apart from text messages and performed after text messages to the victim were not discovered. Therefore, Detective Slomeana's search of the cell phone photographs exceeded the scope of Defendant's consent and is unconstitutional.

Because the warrantless search of Defendant's cell phone is unconstitutional, derivative evidence uncovered as a result of the cell phone search must be suppressed under the exclusionary rule. The search warrant to seize the electronic equipment from Defendant's bedroom is supported in part by the non-inculpatory images of minor females found on Defendant's cell phone. Since those images are suppressed, the warrant to search Defendant's bedroom and seize multimedia equipment will also be suppressed unless the remaining bases for probable cause are sufficient on their own to secure a search warrant. Defendant challenges the sufficiency of the remaining facts in the affidavit to establish probable cause to search his bedroom. The Government claims that irrespective of the images of minor females, the additional bases for probable cause for the search warrant, the victim's statements and the detective's expertise, are sufficient to support seizure of Defendant's computers.

The Court concludes that the remaining grounds for probable cause, that is, the student's statement that there may have been other victims and the detective's opinion that victims could have been contacted through social media, are insufficient on their own to secure a search warrant for multimedia devices. To be sufficient, there needs to have been a fair probability that evidence of sexual battery, abduction or other offenses would have been found in Defendant's multimedia devices, which the Government has not proven by a preponderance of the evidence. The victim did not mention Defendant's personal electronic equipment in any of her accusations. The only connection between the accused crime and Defendant's computers is Detective Slomeana's general knowledge of sexual offenders as explained in the affidavit, which bore no specific relation to Defendant or the offense charged. *Compare United States v. Dawson*, 305 F. App'x 149, 161 (4th Cir. 2008) (holding that officers' experiences established probable cause when they had personally investigated the defendant and the location of crimes and there were additional material facts regarding the defendant's efforts to avoid surveillance, incredible denial of possession of drug paraphernalia and criminal record). The victim's statements and the detective's knowledge are not material facts sufficient to establish probable cause to seize the multimedia devices from Defendant's bedroom and consequently, the warrant to search Defendant's bedroom is invalid.

Because the warrant to seize the computers is invalid, the warrant to search the computers must also be deemed invalid since the warrant would never have been issued if there were no computers seized to be searched. Even though the subsequent warrant to search the computers' contents would not have been issued but for the invalid warrant, the Court notes that the warrant to search the computers also lacks probable cause. The material facts cited to establish probable cause for the warrant to search the computers were the victim's statements about inappropriate

interactions with Defendant, Defendant's confession, and Detective Slomeana's knowledge that physical child abusers often sexually exploit children. Again, none of these statements implicate any multimedia device use, and there appears to be little or no probability that evidence of sexual battery or abduction at school could have been uncovered through a search of a home computer. *See United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (noting that "the nexus between the place to be searched and the items seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence."). Detective Slomeana does not connect the material facts to the crimes with which Defendant had been charged. Instead, he cites a possibility that the computers contain evidence of the exploitation of children, a speculation that is insufficient to establish probable cause. *See Giordenello v. United States*, 357 U.S. 480 (1958) (finding no probable cause where officer merely stated his conclusion that defendant had committed a crime but failed to state affirmative allegations or sources for his belief). The statements of the victim, the Defendant and the detective are insufficient to establish probable cause and this search warrant is also invalid.

However, evidence found as a result of the invalid warrants may still be admissible if the Government can demonstrate that police officers acted in good faith reliance on the warrants under the exception to the exclusionary rule. The Fourth Circuit has held that evidence obtained through unlawful search warrants may nonetheless be admissible if the warrants include indications of probable cause that law enforcement officers could have reasonably relied on for their belief that evidence existed. Indicia of probable cause does not exist if "the officer will have no reasonable grounds for believing that the warrant was properly issued" or "a reasonably well trained officer would have known that the search warrant was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922-23.

The Court concludes that the good faith exception is unavailing to the Government. The affidavits supporting the warrants are so lacking in indicia of probable cause as to render an officer's belief in its existence unreasonable. The affidavits do not specify facts that suggest the multimedia items to be seized and searched are related to the offense charged. The detective attempted to establish probable cause using conclusory and speculative assertions. A reasonable police officer would be unable to infer through normal inferences that electronic devices owned by child abusers in general or the Defendant specifically contain evidence related to the criminal activity being investigated—sexual battery and abduction. In addition, Defendant did not have a history of using multimedia to engage in sexual battery, abduction or child exploitation. It is clear that the search warrants the Virginia Beach Police Department relied on were so lacking in indicia of probable cause as to render reliance on them unreasonable. Therefore, law enforcement did not execute the warrants in good faith.

As a result, the Government has not demonstrated by a preponderance of the evidence that the cell phone search was consensual, the search warrants were based on probable cause, or the good faith exception to the exclusionary rule applies. All evidence collected from defendant's cell phone, bedroom and computers is suppressed as required by the exclusionary rule.

## IV. CONCLUSION

For the reasons stated above, the Motion to Suppress statements taken during Defendant's custodial interrogation is **DENIED** because his statements about an attorney were equivocal and his *Miranda* rights were properly waived. The Motion to Suppress the search of Defendant's cell phone for photographs is **GRANTED** because Defendant did not consent to a warrantless search beyond text messages. The Motion to Suppress the search warrants for

Defendant's bedroom and computers is **GRANTED** because probable cause was not established. The Court further finds that the good faith exception to the exclusionary rule does not apply in this case. All evidence discovered as a result of the unconstitutional searches of the cellphone, bedroom and computers is suppressed as fruit of the poisonous tree.

The Clerk is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
_____
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
November 13, 2013